**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SAMEH A. SAADEH,<br><br>                Plaintiff,<br><br>      v.<br><br>T-MOBILE USA, INC.,<br><br>                Defendant. | Case No. 2:21-cv-12871 (BRM) (JSA)<br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is Defendant T-Mobile USA, Inc.'s ("T-Mobile") Motion to Compel Arbitration and Stay Proceedings. (ECF No. 5.) Plaintiff Sameh A. Saadeh ("Mr. Saadeh") filed an opposition. (ECF No. 6.) Mr. Saadeh filed a reply. (ECF No. 9.) Having reviewed the submissions filed in connection with the Motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause having been shown, T-Mobile's Motion to Compel Arbitration is **GRANTED**.

**I.     BACKGROUND**

In 2013, Mr. Saadeh opened an account with T-Mobile. (Pl. Decl. (ECF No. 6-2) at ¶ 2.) T-Mobile's Terms and Conditions, which Mr. Saadeh concedes he did not read or review, including a provision for the arbitration of "any and all claims or disputes in any way related to or concerning" T-Mobile's services, privacy policies, or devices ("Arbitration Agreement"). (*Id.* at ¶ 2–3; *see, e.g.*, Decl. of Christopher Muzio ("Muzio Decl.") Ex. K at 2.)  T-Mobile's Terms and Conditions also include an opt-out term which provides the procedures by which to opt out of the

Arbitration Agreement to pursue claims in court if performed within 30 days of the earlier date of purchase or the activation of a new line of service. (*Id.* at 13.)

In or about February 2020, Mr. Saadeh was a T-Mobile customer, when he also maintained an account with Coinbase, an online platform, to purchase and trade cryptocurrency. (ECF No. 1-1 at 3, ¶¶ 16–17.) On or about February 24, 2020, between 10:05 p.m. and 10:10 p.m., Mr. Saadeh's Coinbase account was compromised, and as a result, he lost several shares of various cryptocurrencies in this period. (*Id.* at 4, ¶ 33.) After contacting the T-Mobile customer service, Mr. Saadeh was advised by a T-Mobile customer service representative that his mobile telephone number was ported to a mobile phone Mr. Saadeh did not own, and a customer service representative in T-Mobile's Philippines office approved and effectuated the port and bypassed all security codes set in place. (ECF No. 1-1 at 4, ¶¶ 25–31.)

On June 19, 2020, Mr. Saadeh received a letter from T-Mobile informing him an unknown party assigned his mobile phone line to a phone other than his on February 24, 2020, from 6:56 p.m. PST to 7:58 p.m. PST (*Id.* at 5, ¶ 34.)

On May 18, 2021, Mr. Saadeh filed a Complaint in the Superior Court of New Jersey, asserted claims against T-Mobile under the Federal Communications Act ("FCA"), the Computer Fraud and Abuse Act ("CFAA"), and federal and state common law claims. (ECF No. 1-1.) On June 22, 2021, T-Mobile removed the case to this Court. (ECF No. 1.) On June 29, 2021, T-Mobile moved to compel arbitration (ECF No. 5.) On July 19, 2021, Plaintiff filed an opposition. (ECF No. 6.) On August 2, 2021, T-Mobile filed a reply. (ECF No. 9.)

## II.    LEGAL STANDARD

"In considering a motion to compel arbitration, a court must engage in a two-step analysis: it must determine first whether there is a valid agreement to arbitrate and, if so, whether the specific

dispute falls within the scope of said agreement." *Thomas v. Jenny Craig, Inc.*, Civ. A. No. 10-2287, 2010 WL 3076861, at *3 (D.N.J. Aug. 4, 2010) (citing *Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 523 (3d Cir. 2009); *Salvadori v. Option One Mtg. Corp.*, 420 F. Supp. 2d 349, 356 (D.N.J. 2006)). "In doing so, the Court utilizes the summary judgment standard of Federal Rule of Civil Procedure 56(c)." *Id.* (citing *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd.*, 636 F.2d 51, 54 n.9 (3d Cir. 1980)).

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(c). "An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law." *Kaucher v. Cty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Curley v. Klem*, 298 F.3d 271, 276–77 (3d Cir. 2002). "Summary judgment may not be granted . . . if there is a disagreement over what inferences can be reasonably drawn from the facts even if the facts are undisputed." *Nathanson v. Med. Coll. of Pa.*, 926 F.2d 1368, 1380 (3rd Cir. 1991) (citing *Gans v. Mundy*, 762 F.2d 338, 340 (3d Cir.), *cert. denied*, 474 U.S. 1010 (1985)); *Ideal Dairy Farms, Inc. v. John Labatt, Ltd.*, 90 F.3d 737, 744 (3d Cir. 1996).

"Therefore, a court must first determine whether there is a genuine issue of material fact as to whether a valid arbitration agreement exists." *Jayasundera v. Macy's Logistics & Operations, Dep't of Human Res.*, Civ. A. No. 14-7455, 2015 WL 4623508, at *2 (D.N.J. Aug. 3, 2015). In making this determination, the party opposing arbitration receives "the benefit of all reasonable doubts and inferences that may arise." *Id.* (quoting *Par-Knit Mills, Inc.*, 636 F.2d at 54). "In examining whether certain claims fall within the ambit of an arbitration clause, a court must 'focus . . . on the factual allegations in the complaint rather than the legal causes of action asserted.'" *Id.* (quoting *Mutual Ben. Life Ins. Co. v. Zimmerman*, 783 F. Supp. 853, 869 (D.N.J. 1992) (citation omitted)). If the court determines that the claims in dispute fall within the scope of the arbitration agreement, the court must "refer the dispute to arbitration without considering the merits of the case." *Id.*

### III. DECISION

Federal law presumptively favors the enforcement of arbitration agreements. *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 178 (3d Cir. 1999). "The FAA requires courts to stay litigation and compel arbitration of claims covered by a written, enforceable arbitration agreement." *Bacon v. Avis Budget Grp.*, 959 F.3d 590, 599 (3d Cir. 2020) (citing FAA, 9 U.S.C. §§ 3, 4). Under the FAA, agreements to arbitrate are "valid, irrevocable, and enforceable," subject only to traditional contract principles. 9 U.S.C. § 2; *see also CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 98 (2012) (citations omitted) (explaining the FAA favors arbitration agreements and "requires courts to enforce agreements to arbitrate according to their terms"). The FAA provides that contract provisions manifesting the intent of the parties to settle disputes in an arbitration shall be binding, allows for the stay of federal court proceedings in any matter referable to arbitration, and permits both federal and state courts to compel arbitration if one party has failed to comply

with an agreement to arbitrate. 9 U.S.C. §§ 2-4. Cumulatively, those provisions "manifest a liberal federal policy favoring arbitration agreements." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991) (quotations omitted).

"[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[.]" *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983); *Townsend v. Pinnacle Entm't, Inc.*, 457 F. App'x 205, 207 (3d Cir. 2012). Therefore, a motion to compel arbitration "should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 650 (1986).

As a preliminary matter, T-Mobile filed its Motion to Compel Arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1, *et seq.* ("FAA") because the Arbitration Agreement, by its express terms, is governed by the FAA. (ECF No. 5-1 at 7). Therefore, T-Mobile's Motion to Compel Arbitration turns on whether Mr. Saadeh agreed to arbitrate, therefore compelling the Court to enforce the Arbitration Agreement, and whether the Court can decide on the arbitrability issue. *See Century Indem. Co.*, 584 F.3d at 523 (instructing courts to engage in two-step analysis when deciding a motion to compel arbitration); *Salvadori*, 420 F. Supp. 2d at 356 (same).

### A. T-Mobile's Arbitration Agreement is not unconscionable and must be enforced.

When the existence of an agreement to arbitrate is an issue, the court must "apply the relevant state contract law to questions of arbitrability, which may be decided as a matter of law only if there is no genuine issue of material fact when viewing the facts in the light most favorable to the nonmoving party." *Aliments Krispy Kernels, Inc. v. Nichols Farms*, 851 F.3d 283, 288 (3d

Cir. 2017). T-Mobile asserts, and Mr. Saadeh does not dispute[1], New Jersey law applies to the Arbitration Agreement. (ECF No. 6 at 13 and ECF No. 5-1 at 10.) Pursuant to New Jersey law, "[a]n arbitration agreement is a contract and is subject, in general, to the legal rules governing the construction of contracts." *McKeeby v. Arthur*, 81 A.2d 1, 4 (N.J. 1951) (citations omitted).

T-Mobile asserts, and Mr. Saadeh does not dispute, he signed T-Mobile's Terms and Conditions that contains an Arbitration Agreement. (ECF No. 6 at 8 and ECF No. 5-1 at 12). All parties agree Mr. Saadeh did not opt-out of the Arbitration Agreement within thirty days provided by T-Mobile's terms and conditions. (ECF No. 6 at 14 and ECF No. 5-1 at 3.) Therefore, the issue remains whether the Arbitration Agreement, being "take it or leave it," is invalid and unconscionable (ECF No. 6 at 11-18).

Mr. Saadeh's contention that he "had no meaningful choice regarding the acceptance of [T-Mobile's] [arbitration] provisions, as every major cellular network provider in the country includes an arbitration provision in its contract" (ECF No. 6 at 17) is insufficient to establish the Arbitration Agreement was unconscionable because Mr. Saadeh had the choice to reject T-Mobile's Arbitration Agreement. *Singh v. Uber Techs. Inc.*, 235 F. Supp. 3d 656, 675 (D.N.J. 2017) (compelling arbitration as the agreement was not an unconscionable contract of adhesion because plaintiff could decline the arbitration provision).

Further, the Court finds Mr. Saadeh voluntarily entered into the Arbitration Agreement that waived his right to litigate. For a waiver of litigation to be valid, assent "need not be an actual signature, but must demonstrate a willingness and intent to be bound by the arbitration provision." *Schmell v. Morgan Stanley & Co.*, Civ. A. No. 17-13080, 2018 WL 1128502, at *2 (D.N.J. Mar. 1, 2018) (citations omitted). Mr. Saadeh concedes he did not opt-out of arbitration because he did

---

[1] Mr. Saadeh's brief only cites to New Jersey state court cases.

"not contemplate the underlying facts of this matter were probably or even possible." (ECF No. 6 at 6.)[2] However, the Arbitration Agreement provides:

> "We each agree that, . . . any and all claims or disputes in any way related to or concerning the agreement, our services, devices or products, including any billing disputes, will be resolved by binding arbitration or in small claims court."[3]

(ECF No. 5-3 at 3.)

"When the terms of a contract are clear, it is the function of the court to enforce it as written and not to make a better contract for either of the parties." *U.S. Pipe and Foundry Co. v. Amer. Arbitration*, 170 A.2d 505, 510 (App. Div. 1961). The Arbitration Agreement is clear that any disputes in any way related to the agreement will be resolved by arbitration. Mr. Saadeh does not allege, nor the Court can find anything in the T-Mobile Terms and Conditions that would deter Mr. Saadeh from waiving his right to litigate. *See Falk v. Aetna Life Ins. Co.*, Civ. A. No. 19-00434, 2019 WL 4143882, at *5 (D.N.J. Aug. 31, 2019) (finding contract did not rise to the level of procedural unconscionability because even assuming the Arbitration Agreement was presented on a 'take-it-or-leave-it basis,' plaintiff was free to decline it and would not have suffered negative

---

[2] Mr. Saadeh argues his declination to opt out of the Arbitration Agreement is not effective due to him not knowing the meaning of Arbitration clause. (ECF No. 6 at 15). "[P]arties are presumed to have knowledge of contracts they have signed." *Quilloin v. Tenet HealthSystem Philadelphia, Inc.*, 673 F.3d 221, 237 (3d Cir. 2012). "With respect to contractual disputes, federal courts have consistently held that a party's failure to recall a relevant event is insufficient to raise an issue as to the occurrence of that event." *Gomez v. Rent-A-Ctr., Inc.*, Civ. A. No. 2:18-1528, 2018 WL 3377172, at *3 (D.N.J. July 10, 2018) (finding that a plaintiff's certification that she did not remember electronically signing an arbitration agreement was insufficient to defeat a motion to compel arbitration). This also forecloses Mr. Saadeh's argument that the Arbitration Agreement is invalid because he "do not recall signing any of the contracts [T-Mobile] provided," "did not even know what it meant to arbitrate the issue of arbitrability." (ECF No. 6-2 at 2.)

[3] T-Mobile's Terms and Conditions further provides small claims courts are only for customer's failure to timely pay amounts due. (ECF No. 5-3 at 3.) Because Mr. Saadeh's dispute with T-Mobile is not due to Mr. Saadeh's failure to pay amounts do, small claims courts appear to not be an appropriate forum for Mr. Saadeh's claim.

consequences as a result of his decision); *Uddin v. Sears, Roebuck & Co.*, Civ. A. No. 13-6504, 2014 WL 1310292, at *7 (D.N.J. Mar. 31, 2014) (same). Therefore, the Court concludes the Arbitration Agreement is not unconscionable, and Mr. Saadeh effectively waived his right to litigate.

Accordingly, because the Court concludes Mr. Saadeh agreed to resolve all of his dispute with T-Mobile related to the T-Mobile Terms and Conditions by arbitration and declined to opt-out of arbitration, the Court must enforce the Arbitration Agreement.

### B. The arbitrability question of Mr. Saadeh's Complaint must be submitted to the arbitrator.

T-Mobile argues the arbitrability question should be decided by an arbitrator because such authority was delegated to the arbitrator. (ECF No. 5-1 at 14.) Specifically, T-Mobile notes its terms and conditions of service incorporate the American Arbitration Association's rules, which provide "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim." (ECF No. 5-1 at 14–15.) Mr. Saadeh counters the "Arbitration Agreement and delegation clause are inapplicable to the present case for extra-contractual torts and committed by [T-Mobile,]" and "tortious and criminal conduct of [T-Mobile] is properly before this Court and should be decided by a jury. (ECF No. 6 at 21.)

"[P]arties can agree to arbitrate gateway questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010) (internal quotations omitted). "[W]hen the parties contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524 (2019) (holding that where "the parties' contract delegates the arbitrability question

to an arbitrator, a court may not override the contract", even where "the argument that the arbitration agreement applies to a particular dispute is wholly groundless").

Here, the arbitration provision expressly delegates the issue of arbitrability to an arbitrator because it provides "the arbitrator shall have the power to rule on his or her own jurisdiction, including . . . scope . . . or to the arbitrability of any claim." As such, Mr. Saadeh's arbitrability questions must be decided by an arbitrator.

### C. CONCLUSION

For the reasons set forth above, T-Mobile's Motion to Compel Arbitration is **GRANTED**.

*/s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**

Dated:  January 21, 2022